Patrick J. Reilly, Esq.
Nevada Bar No. 6103
Bryan L. Wright, Esq.
Nevada Bar No. 10804
HOLLAND & HART LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134
Telephone (702) 669-4600
Facsimile (702) 669-4650
preilly@hollandhart.com
blwright@hollandhart.com

*Attorneys for Defendants William J. Hogan, Thompson MacDonald, Ronald Schinnour, Michael Hogan, Candeo Lava Products, Inc., and Futureworth Capital Corp.*

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RONALD D. SLOAN; ROBIN SCHWARZ; GARY COLLINS; JILL BROWN; LARK TERRELL; NANCY HERBOLD; DANIEL R. SLOAN; BETTY ANN SLOAN; PEARL KIRK; JAMES BOAN; N O WAIT; LARRY ORWICK; PATRICIA LA SALLE; BRIAN WOLFE; STUART R. CAMERON; ROBERT WEBSTER; HUGO BONDI; JOAN BRATSETH; P A BRATSETH; DEREK MILANI; DEAN RACHEY; SAM BROUNSTEIN; SANDRA JANSEN; BRIAN JANSEN; RHONDA KIM NICHOLS; SCOTT NICHOLS; CARMEN ADAIR; KRISTA SCHOFIELD; MARK BRATSETH; ROSE TRUST 11; CLIFF OLSON; DON COLLINS; ROYCE NORDSTROM; NATALIE MAYZEL; DAVID JESSKE; THORNTON D. BARNES; JAMES HASON; SANDRA HASON; EDDIE GUILLET; RYAN GUILLET;

ON BEHALF OF CAN-CAL RESOURCES, LTD.,

Plaintiffs,

vs.

CAN-CAL RESOURCES, LTD., a Nevada corporation; WILLIAM J. HOGAN; THOMPSON MACDONALD; RONALD SCHINNOUR; MICHAEL HOGAN; CANDEO LAVA PRODUCTS, INC. a Canadian Corporation, and FUTUREWORTH

Case No.: 2:14-cv-1164-RFB-NJK

**MOTION TO DISMISS WITHOUT PREJUDICE OR, IN THE ALTERNATIVE, TO STAY**

**(Oral Argument Requested)**

CAPITAL CORP., a Canadian Corporation,

Defendants.

Defendants William J. Hogan, Thompson McDonald, Ronald Schinnour, Michael Hogan, Candeo Lava Products, Inc. ("Candeo"), and Futureworth Capital Corp. ("Futureworth") hereby move this Court for the following orders:

1. Dismissal without prejudice, or in the alternative, a stay, of any and all claims arising out of or relating to the Independent Contractor Agreement dated June 30, 2010 (the "ICA"), between Can-Cal Resources, Ltd. ("Can-Cal") and Futureworth (Exhibit 2 to the Complaint);
2. Dismissal without prejudice any and all claims arising out of or relating to any of the terms, provisions or conditions of the Employment Agreement dated July 1, 2010, between Can-Cal and Michael Hogan (Exhibit 3 to the Complaint);
3. Dismissal without prejudice, or in the alternative, a stay, of any and all claims in connection with any matter arising out of the Material Supply Agreement (the "MSA") dated April 9, 2013, between Candeo and Can-Cal (Exhibit 6 to the Complaint);
4. Dismissal without prejudice, or in the alternative, a stay, of any and all claims in connection with any matter arising out of the Amended and Restated Material Supply Agreement (the "Amended MSA") dated March 3, 2014, between Candeo and Can-Cal (Exhibit 10 to the Complaint), pending arbitration of the same.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

This Motion is made pursuant to 28 U.S.C. § 1401 and 9 U.S.C. § 1 *et seq.*, and is based on the attached Memorandum of Points and Authorities and supporting documentation, the papers and pleadings on file in this action, and any oral argument this Court may allow.

DATED this 22nd day of August, 2014.

/s/ Patrick J. Reilly

Patrick J. Reilly, Esq.
Bryan L. Wright, Esq.
HOLLAND & HART LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

*Attorneys for Defendants William J. Hogan, Thompson MacDonald, Ronald Schinnour, Michael Hogan, Candeo Lava Products, Inc., and Futureworth Capital Corp.*

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS WITHOUT PREJUDICE OR, IN THE ALTERNATIVE, TO STAY**

**I.**

**INTRODUCTION**

This is a shareholder derivative action. Plaintiffs, shareholders of Can-Cal, seek *inter alia* to invalidate several agreements executed by Can-Cal, including two agreements that have effectively saved the company. However, these agreements contain various clauses that require either litigation in another forum, mediation, and/or arbitration. Because Plaintiffs stand in the shoes of Can-Cal, they are bound by these provisions. Also, because these provisions are parts of contracts binding on various defendants, those defendants are entitled to the enforcement of the respective provisions at issue as well. Accordingly, the Defendants seek dismissal without prejudice and/or a stay of proceedings, as it pertains to claims relating to each particular agreement.

**II.**

**STATEMENT OF FACTS**

**A. Substantive Factual Background.**

For the Court's edification, this is most certainly **not** a case involving the "theft" of a corporate opportunity. Defendants take issue with so many over-the-top conclusions, speculative accusations, misstated facts, and wild conspiracy theories worthy of an Oliver Stone film, that there are too many to address in this Motion. Moreover, the purpose of this Motion is merely to ensure that Plaintiffs' claims are heard in the appropriate forum, not to litigate the merits of this case.

That being said, Defendants note the following so that this Court can at least have a balanced understanding of the case and its background:

- Can-Cal purchased the Pisgah Property (approximately 120 acres of undeveloped land located in the California desert, east of Barstow) in the mid-1990s for its perceived potential to mine precious metals. The Pisgah Property proved to contain no assessable precious metals and was cost prohibitive for mining. The

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

Pisgah Property has been undeveloped ever since then.

- The lead plaintiff[1] is Ronald Sloan, who was President and a Director of Can-Cal from 1995 to 2009. Mr. Sloan nearly bankrupted Can-Cal when his misdeeds as President and Director incurred the wrath of the British Columbia Securities Commission (the "BCSC"). *See* Declaration of Patrick J. Reilly, at **Exhibit "A"** and **Exhibit "B"** (which includes a letter from Sloan's counsel, Sam J. Goheen, admitting to Sloan's wrongdoing). Can-Cal was forced to pay approximately $1,000,000, which was comprised of legal fees, British Columbia Securities Commission investigation costs, unqualified shareholder rescission payments, Sloan's legal costs, securities filings, and corporate costs which, to this day, have had a devastating impact on Can-Cal.
- Since then, the company has been surviving only as a result of monetary advances by certain of its shareholders, including William J. Hogan and Michael Hogan. No officer or director salaries have ever been paid to William Hogan, Thompson McDonald, Ronald Schinnour, or Michael Hogan. But for these cash advances and salary deferrals, Can-Cal would have dissolved long ago, and there would be no shareholder value whatsoever.
- The Pisgah material ("Pisgah Material") is a volcanic rock. It is **<u>not</u>** an organic fertilizer.[2]
- Pisgah Material has shown no benefits as a fertilizer whatsoever.
- Pisgah Material may have the potential to be commercialized as a soil amendment product.[3] However, before the Pisgah Material can be marketed as a commercial

[1] Mr. Sloan is the only Plaintiff to execute a verification of the Complaint. He asserts that he, his family, friends, and associates own "approximately 50% of all of the outstanding shares of Can-Cal." Complaint ¶ 18. Mr. Sloan also claims to possess 349,000 warrants to purchase more Can-Cal shares. *Id.* ¶ 16. Despite these alleged facts, Mr. Sloan does not explain why he, his family, friends, and associates do not simply vote to remove the board members and replace them, if Can-Cal is really being so badly mismanaged.

[2] "Organic" fertilizer is a fertilizer that is necessarily derived from animal or vegetable matter (i.e., manure). www.merriam-webster.com/dictionary/organic (defining the noun "organic"). Rock can **<u>never</u>** be considered an "organic fertilizer," and Plaintiffs lack of understanding of this basic concept speaks volumes as to the lack of substantive merit underlying their allegations.

[3] Fertilizer adds nutrients to the soil. In contrast, a soil amendment product can help water infiltrate through the

soil amendment product, it must be scientifically tested and proven. This has not happened yet. Moreover, this process takes time and significant amounts of capital—capital which Can-Cal does not have. As a result, the Plaintiffs' assertion that Can-Cal's Pisgah Property has a present worth of $2,000,000,000 is totally fictional.

- This lawsuit was filed after Mr. Sloan repeatedly demanded that Can-Cal announce in a public filing that its Pisgah Material possessed **demonstrated proven abilities** as a fertilizer. Mr. Sloan pressed for such a statement in the hopes of artificially inflating Can-Cal's stock price. Because Can-Cal's stock price currently hovers at around 5 cents per share, Sloan believes he would profit immensely by such an announcement.[4] However, such a statement, at this point, would be premature and false, and would expose Can-Cal and its directors to near certain securities fraud claims and a regulatory investigation.
- In early 2013, Can-Cal was working with Grant McKay, a highly respected businessman in the fertilizer industry, to prove up the potential for the Pisgah Material so that it could be commercialized. However, Mr. McKay ended his involvement with Can-Cal on February 25, 2013, once he determined that the Pisgah Material had no value as a fertilizer. William Hogan, viewing Mr. McKay's resignation as a "final nail in the coffin" for Can-Cal, resigned as a director of Can-Cal just two days later.
- **After** resigning, William Hogan was approached by Lindsay Young, a significant Can-Cal shareholder, in a last-ditch attempt to salvage Can-Cal. Mr. Young told Mr. Hogan about Lafarge Corporation, a multi-national corporation for whom Mr. Young worked. Mr. Young convinced Mr. Hogan that Lafarge was successfully

(continued) topsoil without creating additional nutritional benefits. Gypsum is a commonly known inorganic soil amendment product. *See* http://homeguides.sfgate.com/difference-between-soil-amendment-fertilizer-71209.html.

[4] Mr. Sloan's belief that such announcement would boost the stock price of Can-Cal is misplaced. Can-Cal has no brokerage sponsorship support, nor will it have any such support until the Pisgah Material can demonstrate proven technical benefits from a qualified third party research center and/or credible scientists.



Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

using a volcanic pumice deposit in Greece to develop a soil amendment product; Mr. Young felt that it was worth the effort to see if the Pisgah Material had the potential to duplicate Lafarge's success in order to save Can-Cal.

- Mr. Young convinced William Hogan to put together a corporate structure that would enable the ability to raise money for a new entity, Candeo Lava Products Inc. ("Candeo"), to research the possibility of using the Pisgah Material as a soil amendment product. Their intention was that Candeo would bear all of the risk and costs of researching the Pisgah Material as a soil amendment product, and if the research proved successful, develop a program to commercially market it. By agreeing to prepay for set quantities of Pisgah Material, Candeo would be providing a revenue stream for Can-Cal, which no longer had any ability to develop the Pisgah Material, had virtually no funds in the bank and had no source of cash flow. This resulted in the Material Supply Agreement (the "MSA") and, later, the Amended Material Supply Agreement (the "Amended MSA").
- The MSA and Amended MSA were both extremely generous deals for Can-Cal and its shareholders, which include the Defgendants: William J. Hogan, Thompson McDonald, Ronald Schinnour, and Michael Hogan. Under the Amended MSA (which replaced the MSA), Candeo bears **all** of the financial risk of the transaction, including the costs of research, development, testing, and approvals. For its part, Can-Cal receives $150,000 guaranteed during each of the first three years of the Amended MSA. As the Pisgah Material is extracted, Can-Cal receives the greater of $15.00 per ton or 35% net profit from the sale of the Pisgah Material in the first year, and 50% of the net profits every year thereafter. The industry standard for such agreements is far lower, in the range of only 5%-15%.[5]
- Can-Cal has made its required SEC filings throughout this period. *See, e.g.*, its

[5] Plaintiffs must concede that their claims—to the extent they challenge the wisdom of any these agreements as business choices—are barred by the Business Judgment Rule. *See, e.g.*, Nev. Rev. Stat. § 78.138(7).



Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

most recent 10-K filing, attached as **Exhibit "C"** to the Reilly Declaration. Notably, the filing discloses the MSA and its terms in significant detail.

**B. Plaintiffs' Claims and The Forum Selection Clause and Arbitration Agreements Governing Them.**

The Plaintiffs assert their claims purely on a derivative basis on behalf of Can-Cal. Complaint at ¶ 2 ("[T]his action is brought by shareholders of Can-Cal to enforce the rights of Can-Cal against each of the Directors and Officers of Can-Cal and two Canadian companies formed by Defendant William Hogan."). As such, Can-Cal is a nominal defendant in this case. *Id.* ¶ 19.

**1. The ICA and the Employment Agreement.**

Plaintiffs assert various claims of impropriety regarding the operation of Can-Cal. Among them, Plaintiffs allege that Can-Cal entered into an Independent Contractor Agreement (the "ICA") with Futureworth, yet describe the agreement as "William Hogan's Contract," essentially maintaining that it is an improper personal services contract for an insider. *See* Complaint at ¶ 34. Plaintiffs also allege that Can-Cal entered into an Employment Agreement with Michael Hogan on July 1, 2010 (the "Employment Agreement"), paying him a base salary of $120,000 per year. *Id.* ¶ 35. Plaintiffs contend that the ICA and the Employment Agreement are "completely unjustified and excessive and a waste of corporate assets" and seek to set aside these agreements, arguing that any compensation received by Futureworth and/or Michael Hogan "should be returned" to Can-Cal.[6] *Id.* ¶¶ 37-38.

The ICA, which is attached as Exhibit 2 to the Complaint, contains a binding forum selection clause, which states as follows:

> Any proceeding arising out of or relating to this Agreement shall be brought in the Court of Queens Bench in the Province of Alberta. Both [Can-Cal] and [Futureworth]

[6] Futureworth has never received compensation as a result of the ICA, and Michael Hogan has never received any compensation as a result of the Employment Agreement. As Plaintiffs are all too aware, Can-Cal currently "operates at a significant loss" and thus has been unable to pay any monies on either of these contracts. Complaint ¶ 33. Rather than take money from Can-Cal, as Plaintiffs baldly speculate, William Hogan and Michael Hogan have actually **advanced** funds to Can-Cal in various amounts and at various times so that the company can remain solvent. Without these advances, Can-Cal would have expired long ago, and Plaintiffs' shareholder value would be nonexistent.



Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

> irrevocably submit to the **<u>exclusive</u>** jurisdiction of each such Court in **<u>any</u>** proceeding, and expressly waives any objection it may now or hereafter have to venue or convenience of for[u]m and aggres [sic] that all claims arising out of or relating to this Agreement shall be heard and determined **<u>only</u>** in any such Court. The Parties agree that either or both of them may file a copy of this paragraph with any Court as written evidence of the knowing, voluntary and bargained for agreement between the Parties to irrevocably waive any objections to venue or to convenience of forum.

Complaint, Exhibit 2 at ¶ 8(e) (emphasis added). Meanwhile, the Employment Agreement, which is attached as Exhibit 3 to the Complaint, contains a binding mediation and arbitration clause which states as follows:

> Any controversy between the Company and Executive arising out of or relating to any of the terms, provisions or conditions of this Agreement shall first be attempted to be resolved informally between the parties. In the even[t] the parties are not able to resolve the controversy informally within 10 days, the matter **<u>shall be mediated</u>**, with each party appointing a mediator for said purpose. [W]ithin 20 days of the appointment of mediators the parties continue to be unable to resolve their controversy, the matter **<u>shall be submitted to arbitration</u>** in accordance with the American Arbitration Association's National Arbitration Rules for the Resolution of Employment Disputes. On the written request of either party for arbitration of such a claim pursuant to said paragraph, the Company and Executive **<u>shall both be deemed to have waived the right to litigate the claim in any federal or state court</u>**….The parties agree that the required attempts at informal resolution and mediation shall constitute **<u>mandatory conditions precedent</u>** to application of the arbitration provisions set forth herein.

Complaint, Exhibit 3 at ¶14 (emphasis added). Plaintiffs have not satisfied any of the conditions precedent for informal resolution or mediation as of this time. Exhibit B.

**2. The MSA and Amended MSA.**

Much ado is made in the Complaint about the Material Supply Agreement (the "MSA") (Exhibit 6 to the Complaint), which was Amended and Restated on March 3, 2014 (the Amended MSA") (Exhibit 10 to the Complaint) between Candeo and Can-Cal. Plaintiffs describe these agreements as usurping Can-Cal's corporate opportunity, in that the agreements provide that Can-Cal "cannot sell its own Material for agricultural or mineralization purposes,

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

which is its greatest value, for up to 25 years" with extensions built in. Plaintiffs further claim that the agreements are unfairly titled in favor of Candeo in terms of profit distribution. *See e.g.*, Complaint ¶¶ 53-54, 77. Here too, Plaintiffs seek to have these contracts voided *ab initio*. Complaint at p. 48 lns. 17-22.

These contracts also contain binding arbitration provisions, which state as follows:

> Any disagreement between the parties in connection with any matter arising out of this Amended Material Supply Agreement **shall be referred to arbitration** before a single arbitrator. Any such selection, including the selection of the arbitrator, **shall be governed** by the rules and regulations of the American Arbitration Association. The decision of any such arbitrator **shall be final and binding** on the parties and the costs and fees relating thereto shall be borne and paid in the manner the arbitrator determines to be fair and reasonable.

Complaint, Exhibit 10 at ¶ 19 (emphasis added).

## III.

## LEGAL ARGUMENT

The purpose of a shareholder derivative suit is to protect the interest of a corporation "from the misfeasance and malfeasance of faithless directors and managers." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991). Because the Business Judgment Rule gives a board of directors broad discretion not to sue, Fed. R. Civ. P. 23.1 is designed to confer standing upon shareholders to sue on behalf of the corporation once demand is made or excused. *See id.* at 96. The corporation must be joined as an indispensable party. *See Knop v. Mackall*, 645 F.3d 381, 383 (D.C. Cir. 2011). However, plaintiffs in a shareholder derivative suit are not "parties" in the truest sense of the word; rather, they "stand in the shoes of the corporation." *In re: Johnson & Johnson Derivative Litig.*, 900 F. Supp.2d 467, 476 n.4 (D.N.J. 2012).

### A. This Court Must Enforce The Forum Selection Clause In The ICA.

Forum selection clauses require specific performance and, where such a clause provides for the exclusive litigation of disputes in a foreign country, a district court is required to dismiss any claims that are subject to the clause. *Republic Int'l Cor. v. Amco Engineers, Inc.*, 516 F.2d



Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

161, 168-69 (9th Cir. 1975) (reversing judgment requiring litigation in Uruguay). Under Federal law, "[a]ny civil action by a stockholder on behalf of his corporation may be prosecuted in any judicial district *where the corporation might have sued the same defendants*." 28 U.S.C. § 1401 (emphasis added). Section 1401—formerly titled as 28 U.S.C. § 112—"allows suit to be brought where the corporation could have brought it **and nowhere else**." *Philipbar v. Derby*, 85 F.2d 27, 30 (2d Cir. 1936) (emphasis added). Moreover, the "[s]tatute relating to venue of suit by stockholder on behalf of corporation was not intended to confer on a stockholder of a corporation a right of action which he would not otherwise possess." *Overfield v. Pennroad Corp.*, 113 F.2d 6 (3d Cir. 1940).

In this case, both Can-Cal and Futureworth are entitled to enforcement of the ICA. The language of the forum selection clause is broad, clear, and unambiguous, and mandates that the Court of Queens Bench in the Province of Alberta be the **exclusive** jurisdiction for any proceeding "arising out of or relating to" the ICA. Complaint, Exhibit 2 at ¶ 8(e). This clause is part of the "knowing, voluntary and bargained for agreement between the parties" which includes a waiver of the right to proceed in any other forum. *Id.*

Accordingly, all claims "arising out of or relating to" the ICA must be dismissed without prejudice.

**B. This Court Must Enforce the Mandatory ADR Provisions of the Employment Agreement, the MSA, and the Amended MSA.**

Congress enacted the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1–16, in 1925 to overcome widespread judicial resistance to arbitration. *Buckeye Check Cashing, Inc. v. Cardegna*, 526 U.S. 440, 441 (2006). In general, arbitration provides a forum for resolving disputes more expeditiously and with greater flexibility than litigation. *See Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003). The FAA, which governs agreements to arbitrate in contracts involving commerce, was intended by Congress to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate ... and place such agreements on the same footing as other contracts." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*,

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

489 U.S. 468, 474 (1989)) (internal citation and punctuation omitted). Under the FAA:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. In enacting these provisions, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agree to resolve by arbitration." *Southland Corp. v. Keating*, 466 U.S. 1, 10 (1984).

Courts must place arbitration agreements on an equal footing with other contracts, *Cardegna*, 546 U.S. at 443, and enforce them according to their terms, *Volt Info.*, 489 U.S. 468, 478 (1989). Section 2 of the FAA makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This so-called "savings clause" in § 2 "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Conception*, 563 U.S. —, 2011 WL 1561956, at *5 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Section 4 requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party. *Id.* at § 4. The FAA's overarching purpose is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate informal, streamlined proceedings. *Conception*, 563 U.S. - - - -, 2011 WL 1561956, at *8 (2011).

In this matter, the Defendants seek a dismissal without prejudice. Under Section 3 of the FAA, a district court may dismiss, rather than stay, the court action pending resolution of the arbitration. *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (holding that the Federal Arbitration Act did not limit the court's authority to grant dismissal in the case); *see also*

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

*Germaine Music v. Universal Songs of Polygram*, 275 F. Supp.2d 1288, 1299 (D. Nev. 2003). *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992); *Cooper v. QC Finan. Servs., Inc.*, 503 F. Supp.2d 1266 (D. Ariz. 2007). In the alternative, Defendants seek a stay of all such claims until the appropriate mediation/arbitration has been concluded. Plaintiff's claims involve agreements (the Employment Agreement, MSA, and Amended MSA) containing binding mediation and arbitration agreements that simply have not been met. Based on the foregoing, Defendants are entitled to enforcement of those provisions.

**IV.**

**CONCLUSION**

Accordingly, Defendants respectfully request that this Court grant the instant Motion as follows:

1. Dismissing without prejudice or staying any and all claims arising out of or relating to the ICA, pending arbitration of the same;
2. Dismissing any and all claims arising out of or relating to any of the terms, provisions or conditions of the Employment Agreement;
3. Dismissing without prejudice or staying any and all claims in connection with any matter arising out of the MSA, pending arbitration of the same;
4. Dismissing without prejudice or staying any and all claims in connection with any matter arising out of the Amended MSA, pending arbitration of the same.

DATED this 22nd day of August, 2014.

/s/ Patrick J. Reilly

Patrick J. Reilly, Esq.
Bryan L. Wright, Esq.
HOLLAND & HART LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

*Attorneys for Defendants William J. Hogan, Thompson MacDonald, Ronald Schinnour, Michael Hogan, Candeo Lava Products, Inc., and Futureworth Capital Corp.*

Holland & Hart LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of August, 2014, a true and correct copy of the foregoing **MOTION TO DISMISS WITHOUT PREJUDICE OR, IN THE ALTERNATIVE, TO STAY** was served on counsel through the Court's electronic service system as follows:

**Electronic Service:**

Suvinder S. Ahluwalia, Esq.
410 South Rampart Blvd., Suite 350
Las Vegas, Nevada 89145
Tel: (702) 360-6000
Fax: (702) 360-0000
Eamil: sahluwalia@sklar-law.com

*Attorneys for Plaintiffs*

/s/ Susann Thompson
An employee of Holland & Hart LLP